UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KNOWN LITIGATION HOLDINGS, LLC,<br>    *Plaintiff*,<br>    *v.*<br>NAVIGATORS INSURANCE CO, NAVIGATORS MANAGEMENT (UK) LTD., CERTAIN INTERESTED UNDERWRITERS AT LLOYD'S OF LONDON, NEW ENGLAND CASH DISPENSING SYSTEMS, Inc., and INTEGRATED MERCHANT SYSTEMS, LLC,<br>    *Defendants*. | Civil No. 3:12cv269 (JBA)<br><br>November 14, 2014 |

**RULING ON MOTION TO INTERVENE**

In this action, Known Litigation Holdings ("KLH"), the successor assignee of Domestic Bank, seeks to recover insurance proceeds from Defendants Navigators Insurance Company, Navigators Management (UK) Ltd., and Certain Interested Underwriters at Lloyd's of London (collectively "Navigators"), in KLH's capacity as loss payee under several insurance policies Defendants issued to New England Cash Dispensing Systems, Inc. ("NECD") and its affiliate, Integrated Merchant Systems, LLC ("IMS"). (2d Am. Compl. [Doc. # 47].) Navigators filed an Answer on October 11, 2013, in which it asserts a number of affirmative defenses as well as cross-claims against NECD and IMS. (Ans. [Doc. # 51].) The cross-claims allege insurance fraud and seek indemnification and a declaratory judgment that the insurance policies were properly rescinded due to material misrepresentations made by NECD and IMS, Navigators properly denied coverage, and coverage is barred by the known loss doctrine. (Cross-claims [Doc. # 51].) Neither NECD nor IMS have responded to these claims. On

February 26, 2014, Navigators moved for entry of default on its cross-claims against NECD and IMS.  (Mot. for Default Entry [Doc. ## 68, 69].)  Absent any response from NECD or IMS, default entered on March 4, 2014.  Navigators now moves [Doc. ## 72, 73] for default judgment.  KLH moves [Doc. ## 78, 80] to intervene in the cross-claims before default judgment is entered against NECD and IMS.  Oral arguments on both motions were heard on October 29, 2014.  For the following reasons, KLH's motion to intervene is granted.  The Court will keep Navigators's motion for default judgment under advisement while the parties submit additional briefing.

I.     Factual Background

   A.     The NECD Agreement

Plaintiff is the successor assignee of certain claims of Domestic Bank arising out of Domestic Bank's status as a loss payee on several insurance policies underwritten by Defendants.  (*See* 2d Am. Compl. [Doc. # 24] ¶ 1.)  Beginning in March 2000, Domestic Bank entered into an agreement with NECD (the "NECD Agreement"), pursuant to which NECD was responsible for providing ATM services to ATMs owned by Domestic Bank.  (*See id.* ¶¶ 17–18; NECD Agreement, Ex. A to 2d Am. Compl.).  On May 12, 2006, Domestic Bank entered into a second agreement with NECD and IMS (the "Courier Agreement"), pursuant to which NECD and IMS were responsible for transferring cash owned by Domestic Bank (the "Bank Cash") to and from Domestic Bank's ATMs.  (*See* 2d Am. Compl. ¶¶ 19–20; Courier Agreement, Ex. B to 2d Am. Compl.)  Under the terms of the Courier Agreement, NECD and IMS were liable for losses to Domestic Bank resulting from any malfeasance on the part of NECD's or IMS's employees:

2

> Except in respect to shortages of Bank's currency which are determined to be the result of ATM hardware or software malfunction, Couriers shall be responsible for any shortage or loss of Bank's currency, resulting from embezzlement or theft by any third party or employee or agent of Couriers, from any act of God or insured peril, from any terrorist act, from any mysterious unexplained disappearance or from any other cause, whether known or unknown; and Couriers shall reimburse Bank for any such shortage or loss. Such reimbursement shall be made forthwith upon notice by Bank to Couriers of any such shortage or loss.

(Courier Agreement, ¶ 3.) Thus, as a part of the Courier Agreement, NECD and IMS were required to maintain insurance for the services they provided to Domestic Bank:

> At all times while Couriers are providing services to Bank as herein set forth, Couriers shall maintain insurance with coverage in amounts and with deductibles as are set forth in the schedule of insurance which is Exhibit A attached hereto and made a part hereof or with such other carriers, with such higher amounts of coverage and/or such other deductibles as Bank may require from time to time hereafter. In all such insurance, Bank will be named as loss payee. Each insurance policy shall require not less than 30 days advance notice to Bank of cancellation of the policy and, if available to Couriers, with not less than 30 days advance notice of non–renewal of such policy. The term non–renewal shall include non–renewal by Couriers as well as by the insurance carrier. The insurance carrier or Couriers' agent shall provide to Bank each year a certificate evidencing the existence of such insurance forthwith upon renewal thereof.

(*Id.* ¶ 2; *see also* 2d Am. Compl. ¶¶ 21–24.)

### B.     The Courier Risks Policy

In February 2006, NECD purchased an insurance policy underwritten by Defendants, insuring NECD for certain courier risks (the "Courier Risks Policy"). (*See* 2d Am. Compl. ¶¶ 26–29; Courier Risks Policy, Ex. B to 2d Am. Compl.) This policy included coverage for the embezzlement of funds by NECD employees:

3

> Notwithstanding any thing [sic] herein contained to the contrary, it is noted and agreed that: The Insured property is also covered against loss caused by dishonesty and/or embezzlement committed by any employees of the Assured provided that such losses are discovered within 30 (thirty) days of their occurrence. . . .

(Courier Risks Policy; *see also* 2d Am. Compl. ¶ 29.) In April 2006, a Loss Payment Rider was added to the Courier Risks Policy, which identified Domestic Bank as a potential designated loss payee:

> In the event that the insured is entitled to any payment under this policy, it is agreed that the insured may designate, in writing, a customer to whom the payment or any part thereof shall be made. It is further understood and agreed that insured's designee has no rights under the contract of insurance. The only right conferred is the right to receive direct payment in accordance with this rider but in no event shall payments made under this policy exceed the applicable coverage limit.

(Loss Payment Rider, Ex. D to 2d Am. Compl.; *see also* 2d Am. Compl. ¶ 30.) A Cancellation Clause was also added, stating: "It is understood and agreed that this policy may be cancelled by either side subject to 30 days['] notice in writing to Domestic Bank." (Cancellation Clause, Ex. E to 2d Am. Compl.; *see also* 2d Am. Compl. ¶ 31.) In July 2006, an Armored Car Cargo Liability Policy endorsement was also included as a part of the Courier Risks Policy. (*See* 2d Am. Compl. ¶¶ 32–34; Ex. F to 2d Am. Compl.)

On September 26, 2006, Domestic Bank contacted the overseas broker for Navigators requesting additional clarification regarding NECD's coverage under the Courier Liability Policy. (*See* 2d Am. Compl. ¶ 35–37; Ex. G to 2d Am. Compl.) Specifically, Domestic Bank inquired as to the nature of the coverage for losses arising from employee malfeasance:

4

> The policy specifically states that there is coverage for acts or omissions of the insured or any of its employees. Thus, I would assume that there is coverage under this policy for theft of Domestic Bank's money by an employee of NEC[D] and the condition of 30 days' notice is not applicable in this policy.

(Ex. G to 2d Am. Compl.; *see also* 2d Am. Compl. ¶ 35.) On October 9, 2006, Navigators' agent replied that Domestic Bank's understanding was "basically []correct" but that further clarification and simplification was needed. (*See* 2d Am. Compl. ¶¶ 37–39; Ex. H to 2d Am. Compl.) In light of the response that further clarification was needed, Domestic Bank replied requesting a response to its outstanding questions, but no further communication regarding Domestic Bank's interpretation of the policy was received. (*See* 2d Am. Compl. ¶ 40; Ex. G to 2d Am. Compl.) NECD renewed the Courier Risks Policy every year from 2006 to 2010, and continued to name Domestic Bank as the only designated customer in the Loss Payment Rider. (*See* 2d Am. Compl. ¶ 41; Exs. J, K, L, and M to 2d Am. Compl.)

### C. The Bank Loss

According to Navigators, "[a]t some point in 2005, [non-party CEO of NECD and IMS Joseph] Sarlo and various other officers and directors of NECD and IMS" conspired "to defraud others by converting cash supplied by others for use in certain ATMs in the NECD ATM network and using that cash for their own purposes." (Cross-Claim ¶¶ 4–7.) "As of January 2006, [when NECD and IMS first completed the application for the Courier Risks Policy] NECD and IMS knew of the losses which resulted from the conspiracy to defraud. . . ." (*Id.* ¶¶ 10–11.) Navigators asserts that NECD and IMS nonetheless represented on their application in 2006, 2007, 2008, and

5

2009 for the Courier Risks Policy that they were not aware of any losses in the prior six years nor any shortages exceeding $500 in the previous 24 months. (*Id.* ¶¶ 12–19.)

On February 9, 2010, Domestic Bank learned that the government was investigating the alleged theft and conversion of Bank Cash from the ATMs serviced by NECD and IMS. (*See* 2d Am. Compl. ¶ 42.) Domestic Bank demanded an accounting of Bank Cash from NECD in light of this investigation, but on February 23, 2010, the CEO of NECD and IMS, Joseph Sarlo, confessed to Domestic Bank that a proper accounting could not be supplied, and that he was aware of a shortage of Bank Cash totaling at least $1 million. (*See id.* ¶ 43.) Prior to this confession, neither NECD nor IMS had disclosed the potential shortage of Bank Cash, and Domestic Bank had no reason to suspect that any of its funds were unaccounted for. (*See id.* ¶ 44.) Upon this revelation, Domestic Bank conducted its own investigation and audit of the ATMs serviced by NECD and determined that there was a shortage of Bank Cash in excess of $5 million. (*See id.* ¶ 46.) This shortage resulted from a scheme to defraud Domestic Bank perpetrated by the employees of NECD and IMS between 2006 and 2010. (*See id.* ¶ 47.)

On March 31, 2010, Domestic Bank made a written demand on NECD and IMS for immediate reimbursement of the missing Bank Cash, but Domestic Bank has yet to receive full compensation for the loss resulting from this scheme. (*See id.* ¶¶ 47–48.) A copy of this demand was forwarded to Navigators, and was the first notice Navigators received of the loss. (*See id.* ¶ 49.) On August 31, 2010, Navigators issued a Reservation of Rights letter regarding Domestic Bank's claim against the Courier Risks Policy (*see id.* ¶ 40; Ex. O to 2d Am. Compl.), and on November 29, 2010, Navigators rescinded the Courier Risks Policy *ab initio* as a result of misstatements made by NECD in procuring

6

the policy (*see* 2d Am. Compl. ¶ 51; Ex. P to 2d Am. Compl.). To date, neither Domestic Bank nor Plaintiff has received any payment pursuant to the policies, nor has the refund of any premiums been made to Domestic Bank or Plaintiff. (*See* 2d Am. Compl. ¶ 52.)

NECD "filed for involuntary bankruptcy" on May 10, 2010. (Pl.'s Opp'n to Mot. to Dismiss [Doc. # 30] at 33 n.8.) IMS followed suit on April 17, 2011. (*Id.*) As a result, in order to add NECD and IMS as Defendants in this action, as required by the Court in its Ruling [Doc. # 34] on Defendants' Motion to Dismiss, KLH obtained relief from the automatic stay in both bankruptcies. (Pl.'s Mems. Supp. [Doc. ## 78, 79] at 5; Exs. 2, 3 to Pl.'s Mems. Supp.)

## II.   Discussion

Plaintiff asks the Court to permit it to intervene in the cross-claim action pursuant to Federal Rule of Civil Procedure 24(a)(2), or alternatively Rule 24(b). Navigators opposes the motion, arguing that intervention is reserved for non-parties, and that in any event, Plaintiff does not satisfy the criteria for intervention under Rule 24. Navigators moves for default judgment against NECD and IMS.

### A.  Intervention

As a preliminary matter, Navigators argues that KLH's motion to intervene should be denied because Rule 24 applies only to non-parties, and KLH is already a party to this action. (Defs.' Opp'n [Doc. # 82] at 8–9.) Although it is perhaps unusual for a party to request intervention, KLH is correct that a) Rule 24 permits "anyone" to intervene, and b) for purposes of Navigators's cross-claims against NECD and IMS, KLH is a non-party. (*See* Pl.'s Mem. in Further Supp. [Doc. # 83] at 2.) KLH's status as the plaintiff thus does not bar it from intervening in a cross-claim to which it is not a party.

### 1. Intervention as of Right

Rule 24(a)(2) provides:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2).  "As the language of the rule suggests, a putative intervenor as of right must meet four criteria: the applicant must (1) file a timely motion; (2) claim an interest relating to the property or transaction that is the subject of the action; (3) be so situated that without intervention the disposition of the action may impair that interest; and (4) show that the interest is not already adequately represented by existing parties." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir. 2001).

#### a. Timeliness of the Motion

Navigators contends that KLH's motion is not timely.  It notes that "KLH has known of Navigators's cross-claims against NECD and IMS since they were filed on October 11, 2013" and "KLH has known that NECD and IMS were in bankruptcy since at least July 17, 2012," yet it waited until March 31, 2014 to move to intervene.  (Defs.' Opp'n at 10–11.)

The timeliness requirement of Rule 24 "is not a subject that easily lends itself to a precise definition."  *Sequa Corp.*, 250 F.3d at 182.  Rather, courts consider a number of factors, including: "how long the motion to intervene was delayed, whether the existing parties were prejudiced by that delay, whether the movant will be prejudiced if the motion is denied, and unusual circumstances militating either for or against a finding of

timeliness." *Id.* "The propriety of intervention in any given case . . . must be measured under 'all the circumstances' of that *particular* case." *Stupak-Thrall v. Glickman*, 226 F.3d 467, 475 (6th Cir. 2000) (emphasis in original) (quoting *NAACP v. New York,* 413 U.S. 345, 366 (1973)). More important than "[t]he absolute measure of time between the filing of the complaint and the motion to intervene . . . is what steps occurred along the litigation continuum *during* this period of time." *Id.* at 475 (emphasis in original). Moreover, the fact that default has entered before a motion to intervene is filed is not dispositive, as "[i]t is well-settled that the Second Circuit has a strong preference for resolving disputes on the merits, rather than by default judgments." *Nat'l Fire Ins. Co. of Hartford v. Starbro Const. Corp.*, No. 08-CV-3200NGG, 2009 WL 2602281, at *3 (E.D.N.Y. Aug. 24, 2009) (quoting *Prosperity Partners, Inc. v. Bonilla,* No. 04–CV–1362 (SJF) (ETB), 2005 WL 1661702, at *3 (E.D.N.Y. July 14, 2005)).

In this case, although NECD and IMS were added as defendants on September 5, 2013, they were not served with Navigators's cross-claims until February 4, 2014. The deadline for their Answers did not pass until February 25, 2014. Navigators requested entry of default the very next day, on February 26, 2014. Default entered on March 4, 2014, and KLH filed its motion to intervene on March 31, 2014. Although Navigators is almost certainly correct that KLH knew or should have known that NECD and IMS would default (given their precarious financial situations), it was not unreasonable for KLH to wait and see if NECD and IMS would defend before moving to intervene. Navigators is likely correct that KLH could have intervened earlier to oppose the entry of default, but its failure to do so did not prejudice Navigators. Discovery has not yet begun, and Navigators has not persuasively argued that the several week-long delay incurred due

to KLH's failure to act sooner is likely to prejudice it. Therefore, the first factor favors intervention.

### b. KLH's Interest in the Property at Issue

Navigators claims that KLH has no interest relating to the property or transaction that is the subject of this action. Navigators reasons that "KLH's interest in receiving any payment under the [insurance] policies is expressly conditioned upon, among other things, (i) NECD and IMS being entitled to payment under the policy and (ii) NECD and IMS designating, in writing, KLH as a customer to whom the payment or any part thereof shall be made." (Defs.' Opp'n at 11.) Since default has already entered against NECD and IMS, constituting an admission of liability with regard to Navigators's factual allegations against them, Navigators asserts that KLH cannot satisfy these conditions, and therefore cannot demonstrate that it has any interest in the cross-claims. (*Id.* at 16.)

Although Rule 24(a) "does not specify the nature of the interest required for a party to intervene as a matter of right, the Supreme Court has recognized that '[w]hat is obviously meant . . . is a significantly protectable interest.'" *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991) (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)). Many courts have held that such an interest exists in the closely related context of a tort victim's motion to intervene in an action by an insurance company against an insured alleged tortfeasor for a declaratory judgment that the tortfeasor is not covered by the insurance policy. *See, e.g., Teague*, 931 F.2d at 262; *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995); *New Hampshire Ins. Co. v. Greaves*, 110 F.R.D. 549, 552 (D.R.I. 1986); *Hartford Acc. & Indem. Co. v. Crider*, 58 F.R.D. 15, 18 (N.D. Ill. 1973). Those courts that have held otherwise have generally done so out of

10

concern about the contingent nature of a tort victim's interest before judgment enters in the tort suit. *See, e.g., Penn-Am. Ins. Co. v. Allied Homes, LLC*, No. 11cv1023 (SRU), 2012 WL 3727959, at *1 (D. Conn. Jan. 18, 2012) ("[A]ny interest Ramsey may have in the terms of the insurance contract between Penn and Allied is wholly contingent upon his ultimate success in the underlying [tort] action [against Allied], which remains pending in state court.").

Here, however, Navigators admits that KLH is the loss payee, entitled to whatever insurance proceeds NECD and IMS are entitled to obtain. (*See* Defs.' Opp'n at 16 ("KLH's rights as loss payees are no better than those acquired under the policy by the insured" (internal quotation marks and alterations omitted)).)  KLH's interest in the terms of the insurance contract between NECD/IMS and Navigators is contingent only on NECD and IMS being unable to satisfy their debt to KLH without the insurance proceeds—which, given their insolvency, hardly seems a contingency.  Navigators has sought, through its cross-claims, a declaratory judgment that it has no obligation to NECD/IMS (and thus to KLH).  KLH therefore "stand[s] to gain or lose by the direct legal operation of the district court's [decision with regard to a default judgment of declaratory relief], [and] [a]fter seeking a declaratory judgment that it is not liable under the [insurance] policy . . . , [Navigators] cannot now be heard to claim that [KLH] lack[s] a sufficient interest to oppose such declaratory judgment." *See Teague*, 931 F.2d at 261; *see also Greaves*, 110 F.R.D. at 552 ("The insurer, having brought the declaratory judgment action, is forced to present its case as to why the policy should be invalidated.  Surely it runs counter to our notions of fairness and justice to find that the company would be harmed by being forced to face a stronger, more vigorous opposition.  The role of this

court and the judicial process is to reach a just and equitable resolution based on the facts, a task which can only be aided and served by the assistance of the strongest possible arguments by counsel."). Because KLH does have an interest in the Court's decision with regard to Navigators's cross-claims, the second factor weighs in favor of intervention.

### c. Impairment of KLH's Interest

Navigators does not make any new arguments with respect to the third factor—whether KLH is so situated that without intervention the disposition of the action may impair KLH's interest—instead relying in their brief and at oral argument on their claim that KLH has no interest in the cross-claims because by entry of default, NECD and IMS have admitted Navigators's factual allegations, and as loss payee, KLH has no greater interest or rights than NECD/IMS. However, as KLH persuasively reasoned at oral argument, NECD and IMS's entry of default was a procedural sanction against them for failing to appear; it was not a substantive determination of the merits of the claims, and it was not a sanction on KLH. It should not, therefore, impair KLH's substantive rights. However, if default judgment enters against NECD/IMS, it would cause a declaratory judgment to be entered that NECD/IMS are not covered by the insurance policies and that judgment would likely prevent KLH from recouping the lost funds. *See Teague*, 931 F.2d at 261 (finding intervenors' ability to protect their interest would be impaired by a declaratory judgment of no coverage because they would be unlikely to be able to satisfy their judgment from other assets of the insureds); *Greaves*, 110 F.R.D. at 552–53 ("If the insurer should prevail in the instant action, the Taylor's only recourse will be against the uninsured Greaves, who is without sufficient assets from which to satisfy any substantial judgment. While the possibility that a potential judgment may be more difficult to collect

is not alone sufficient impairment to support intervention as of right, in this instance the potential judgment may be impossible to collect."). For this reason, KLH's interests would be impaired if it were unable to intervene in Navigators's cross-claims against NECD/IMS.

### d. Whether KLH's Interest is Adequately Represented by Existing Parties

Although Navigators contends that this factor favors denying KLH's motion to intervene, it fails to present any arguments in support of this contention other than another recitation of its claim that KLH has no interest. (Defs.' Opp'n at 17–18.) This omission is telling. Indeed, since NECD and IMS have already permitted default to enter against them, it would be difficult to now argue they are likely to adequately represent KLH's interests. Furthermore, "[g]iven the financial constraints [NECD and IMS face], there is a significant chance that they might be less vigorous than [KLH] in defending their claim to be insureds under [Navigators's] policy." *Teague*, 931 F.2d at 263. Therefore, the Court finds KLH's interests are not adequately represented by NECD/IMS.

Having found that KLH filed a timely motion for intervention, that it has an interest in Navigators's cross-claims, that such interest would be impaired if KLH were unable to intervene, and that NECD/IMS are unlikely to adequately represent KLH's interests, the Court concludes that KLH has a right to intervene.

### B. Motion for Certification to Appeal

Navigators requests that the Court revisit its decision regarding Navigators's Motion for Certification to Appeal, which the Court denied [Doc. # 57] on December 5, 2013. Navigators maintains that since default has now entered against NECD and IMS,

NECD and IMS's liability is admitted, and there is no need to further litigate the cross-claims, so a determination by the Second Circuit that Plaintiff lacks standing to sue would materially advance the ultimate termination of the litigation. (Defs.' Opp'n at 19.) Navigators's argument suggests that Navigators has conflated entry of default with a default judgment. While entry of a default judgment under Rule 55(b) establishes a defaulting party's liability, entry of a default only establishes the factual allegations in the complaint (or here, cross-claim) as true. Because the Court declines to enter default judgment on Navigators's cross-claims and will permit KLH to intervene to defend against those claims, there remain cross-claims to be litigated, and the same rationale that the Court employed in denying Navigators's previous request for certification to appeal is still applicable. Therefore, the Court declines Navigators's invitation to reconsider its decision with regard to a certification to appeal.

III.     **Conclusion**

For the foregoing reasons, KLH's Motions [Doc. ## 78, 80] to Intervene in Navigators's cross-claim action are GRANTED. The Court will consider Navigators's Motions [Doc. ## 72, 73] for Default Judgment on its cross-claims after briefing by KLH on the sufficiency of the cross-claim allegations to support default judgment and the effect of default judgment against NECD/IMS on the claims in KLH's complaint. KLH shall file its brief by December 5, 2014, and Navigators shall reply by December 19, 2014.

                                IT IS SO ORDERED.
                                       /s/
                                _____
                                Janet Bond Arterton, U.S.D.J.


        Dated at New Haven, Connecticut this 14th day of November, 2014.