UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KNOWN LITIGATION HOLDINGS, LLC,<br>    *Plaintiff*,<br>        *v.*<br>NAVIGATORS INSURANCE CO., NEW<br>ENGLAND CASH DISPENSING SYSTEMS, Inc.,<br>and INTEGRATED MERCHANT SYSTEMS, LLC,<br>    *Defendants*. | Civil No. 3:12cv269 (JBA)<br><br><br>June 24, 2016 |

**RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT AND MOTIONS
FOR DEFAULT JUDGMENT**

This litigation began in 2012, when Plaintiff Known Litigation Holdings, LLC
("KLH"), the successor assignee of Domestic Bank, filed a complaint against Defendants
Navigators Insurance Company, Navigators Management (UK) Ltd., and Certain
Interested Underwriters at Lloyd's of London (collectively "Navigators"),[1] seeking payment
on several insurance policies issued by Navigators to New England Cash Dispensing
Systems, Inc. ("NECD") and its affiliate, Integrated Merchant Systems, LLC ("IMS"), on
which Domestic Bank was the loss payee. Following this Court's ruling [Doc. # 34] on
Navigators' motion to dismiss, KLH amended its complaint to include NECD and IMS as
defendants, as ordered by this Court. Navigators subsequently filed an answer [Doc. # 51]
asserting several cross-claim against NECD and IMS.

When the insolvent NECD and IMS failed to respond, default entered [Doc. ## 70,
71] against them. At that time, KLH moved to intervene in the cross-claims for the purpose

---

[1] As stipulated by the parties at oral argument, Defendants Navigators Management
(UK) Ltd. and Certain Interested Underwriters at Lloyd's of London are dismissed from
this case.

of opposing default judgment against NECD and IMS. The Court permitted [Doc. # 89] KLH to intervene, but denied [Doc. # 99] both KLH's motion to vacate the entry of default and Navigators' motion for default judgment. Navigators now move [Doc. ## 121, 123], once again, for default judgment, as well as for summary judgment on KLH's complaint [Doc. # 165] and on Navigators' cross-claims [Doc. # 168]. KLH moves [Doc. # 164] for partial summary judgment. Oral argument was held on June 22, 2016. For the following reasons, Navigators' Motion for Summary Judgment is granted; Navigators' Motion for Summary Judgment on their Cross-Claims is granted; KLH's Motion for Partial Summary Judgment is denied, and Navigators' Motions for Default Judgment are denied as moot.

## I.   Factual Background

### A.  The Courier Agreement

Non-party Joseph Sarlo formed IMS, an ATM company, in 1997. (2007 Ins. Appl., Ex. Z to Defs.' Loc. R. 56(a)1 Stmt. [Doc. # 167] at 20.) In 2000, IMS entered into a partnership with a Connecticut telephone company and began operating as NECD, with Mr. Sarlo at its helm as CEO.[2] (*See* Lowers Loss Report # 3, Ex. 14 to Breitenbach Reply Decl. [Doc. # 176] & Ex. K to Defs.' Loc. R. 56(a)1 Stmt. at 9; Baker Opp'n Decl. [Doc. # 175-29] ¶ 14.) Later that year, Mr. Sarlo reached an agreement with Craig Baker, then-Executive Vice President of Domestic Bank, pursuant to which NECD would service Domestic Bank's ATMs. (Baker Opp'n Decl. ¶¶ 2, 12.)

---

[2] Because NECD and IMS acted together in all relevant ways, as agreed by the parties at oral argument, all references to NECD are intended to encompass NECD and IMS.

Although initially NECD provided the cash for the ATMs, in 2003, Domestic Bank took over this function. (Lowers Loss Report # 3 at 9–10.) In 2006, NECD entered into a Courier Agreement with Domestic Bank, under which "NECD was required to pick up cash owned by Domestic Bank from Mount Vernon Money Center ['MVMC'], an armored car and cash management service" and transfer the money to ATMs. (Baker Opp'n Decl. ¶ 15.) The Courier Agreement additionally provided that NECD would maintain insurance for any losses of the Bank's money, and that such insurance would name Domestic Bank as the loss payee. (*See* Courier Agreement, Ex. 2 to Breitenbach Opp'n Decl. [Doc. # 175-12] ¶ 2.)

## B.  The Insurance Policies at Issue[3]

In compliance with the Courier Agreement, in each of February 2007, January 2008, January 2009, and December 2009, Mirza Baig, an NECD employee, submitted an application on behalf of NECD to Navigators for Armored Car Operators' insurance. (*See* 2007 Ins. Appl.; 2008 Ins. Appl., Ex. AA to Defs.' Loc. R. 56(a)1 Stmt.; 2009 Ins. Appl., Ex. BB to Defs.' Loc. R. 56(a)1 Stmt.; 2010 Ins. Appl., Ex. RR to Defs.' Loc. R. 56(a)1 Stmt.) Each application, completed and signed by Mr. Baig, included the following question and answer: Q: "In the last 6 years have you or any predecessor company suffered a loss or losses, whether covered by insurance or not and if insured whether a claim was paid or not?" A: "No." (*Id.*)

---

[3] "KLH is seeking summary judgment only for the 2010 policy," but it asserts that it "may be entitled to payment" under the 2007 to 2009 policies. (Pl.'s Reply [Doc. # 176-4) at 2 n.1.) "[I]t is not making a claim for payment under the 2006 policy." (Pl.'s Opp'n [Doc. # 175-30] at 30.) For that reason, the Court discusses only the 2007–2010 policies in this ruling.

Each year, following their receipt of each application, Navigators issued NECD an insurance policy effective for a period of one year, beginning in February 2007, which covered Armored Car Transit Risks, Vault/Premises Risks, and Unarmored Vehicle Transit Risks. (*See* 2007 Ins. Policy, Ex. DD to Defs.' Loc. R. 56(a)1 Stmt. & Ex. 7 to Breitenbach Opp'n Decl.; 2008 Ins. Policy, Ex. EE to Defs.' Loc. R. 56(a)1 Stmt. & Ex. 8 to Breitenbach Opp'n Decl.; 2009 Ins. Policy, Ex. FF to Defs.' Loc. R. 56(a)1 Stmt. & Ex. 9 to Breitenbach Opp'n Decl.; 2010 Ins. Policy, Ex. GG to Defs.' Loc. R. 56(a)1 Stmt. & Ex. 10 to Breitenbach Opp'n Decl.) Each policy included the following clauses:

> This policy covers the liability of the insured, assumed by the contract or otherwise, for loss of or damage to property [the definition of which includes currency] . . . arising from any cause whatsoever, in transit or otherwise, including any act or omission of the insured or any of its employees, or anyone acting in its service . . . .

> It is understood and agreed that the insured will use night depositories of Banking Institutions in the handling of property of certain of its customers and that this policy shall cover the liability of the insured to such customers with respect to such property while the same is in the custody of Banking Institutions operating such night depositories.

> It is further understood the insured will keep accurate records of the number and amounts of such deposits and will obtain a receipt from the bank on the next banking day following the use of the night depository. . . .

> The insured upon knowledge of any loss, shall give prompt notice thereof to Marshall & Sterling . . . and shall give immediate notice thereof to the public police or other peace authorities having jurisdiction. . . .

> <u>Directors & Officers Exclusion Clause</u>: This policy does not cover loss directly resulting from any act(s), or error(s), or omission(s) of Directors or Officers of the Assured except where such Director or Officer is performing acts coming within the scope of the usual duties of an employee of the Assured. . . .

> <u>Loss Payment Rider</u>: In the event that the insured is entitled to any payment under this policy, it is agreed that the insured may designate, in writing, a customer to whom payment or any part thereof shall be made. It is further understood and agreed that the insured's designee has no rights under the contract of insurance. The only right conferred is the right to receive direct payment in accordance with this rider . . . . Potential Designated Customer(s):- Domestic Bank . . . .

(*Id.*)

## C.  The Conspiracy and Its Aftermath

 In February 2010, nearly four years after signing the Courier Agreement, Domestic Bank learned that the Government was investigating MVMC. (Baker Opp'n Decl. ¶ 38.) Concerned, Mr. Baker met with Mr. Sarlo on February 23, 2010, at which time Mr. Sarlo allegedly confessed that a great deal of Domestic Bank's money was missing. (*Id.* ¶ 39.) Mr. Sarlo and several other NECD employees, namely, Mirza Baig, Gary Vestuti, and John DeMilo, subsequently pled guilty to one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 1349, 1344, and were found jointly and severally liable for restitution in the amount of $4,805,540. (*See* Sarlo Judgment, Ex. O to Defs.' Loc. R. 56(a)1 Stmt.; DeMilo Judgment, Ex. JJ to Defs.' Loc. R. 56(a)1 Stmt; Vestuti Judgment, Ex. MM to Defs.' Loc. R. 56(a)1 Stmt.; Baig Judgment, Ex. E to Defs.' Loc. R. 56(a)1 Stmt.)

On March 31, 2010, Norman Jay Bolotow, secretary and counsel to Domestic Bank, wrote to Mr. Sarlo on behalf of Domestic Bank to notify him that NECD's ATMs were short more than $4,805,540 and to demand immediate reimbursement of that amount. (Bolotow Ltr. Mar. 2010, Ex. 11 to Breitenbach Opp'n Decl. at 2.) Domestic Bank also contacted Marshall & Sterling, the broker through which NECD had obtained its insurance policies, to notify it of the loss. (Baker Opp'n Decl. ¶ 43.)

In response, in June 2010, Lowers & Associates, on behalf of Navigators, commenced an investigation into the claimed losses. (*See generally* Lowers Reports, Ex. 14 to Breitenbach Reply.) On August 31, 2010, Lowers & Associates, again on behalf of Navigators, issued a Reservation of Rights letter, in which it stated that its "preliminary investigation reveals that one or more of the [following] policy terms may apply . . . and that there may be no coverage under the policy based on a violation of policy conditions or because of the applicability of a policy exclusion": the night depositories/record-keeping clause, the notice clause, the cooperation clause, the directors and officers exclusion clause, and the loss payment rider. (Reservation of Rights Ltr., Ex. 12 to Breitenbach Opp'n Decl.) Three months later, on November 29, 2010, Lowers & Associates/Navigators sent NECD/Domestic Bank a "notice of rescission" and "disclaimer of coverage" in which they asserted that Navigators had "determined that the policies issued to [NECD] and [IMS] . . . are subject to rescission on account of material misrepresentations" and violations of the clauses listed in the reservation of rights letter. (Rescission Ltr., Ex. 13 to Breitenbach Opp'n Decl.) This litigation ensued.

**D.  Timing of the Conspiracy**

The record is somewhat unclear as to when the conspiracy between Mr. Sarlo, Mr. Baig, Mr. Vestuti, and Mr. DeMilo began, and when Mr. Sarlo in particular learned about it. By KLH's telling, the conspiracy began in 2006 or 2007,[4] (*see* 2d Am. Compl. ¶ 47 ("Upon information and belief, the scheme to defraud Domestic Bank and its implementation

---

[4] A "court can appropriately treat statements in briefs as binding judicial admissions of fact." *Callahan v. U.S. Filter, Inc.*, No. 01-CV-6406, 2005 WL 61498, at *2 (W.D.N.Y. Jan. 11, 2005) (quoting *Purgess v. Sharrock,* 33 F.3d 134, 144 (2d Cir. 1994)).

against Domestic Bank by NECD, IMS and/or their respective principals, employee and/or agents was ongoing and continuous from 2006 through at least February 23, 2010 and possibly thereafter . . . ."); Pl.'s Mem. Supp. Mot. Summ. J. [Doc. # 164-15] at 8 ("Starting around 2007, some of NECD/IMS's employees . . . began diverting Domestic Bank cash intended to refill ATMS to themselves for their personal use."[5])), but Mr. Baker avers that Mr. Sarlo did not learn about it until "much later" (*see* Pl.'s Loc. R. 56(a)2 Stmt. [Doc. # 175] ¶¶ 9, 10 (citing Baker Opp'n Decl. ¶¶ 35–37)).

Mr. Sarlo, himself, however, told Navigators' investigator, Don Mark Lowers, that "sometime during 2005–2006 he was told by his Vault Manager Baig that whatever NECD operating monies Sarlo thought was in the vault wasn't even close to what was actually there," and that Mr. Sarlo, upon learning this, "agreed to" let Mr. Baig "cover-up" the losses. (Lowers Loss Report # 3 at 10.) As discussed below, Mr. Baker's testimony to the contrary is not competent evidence to create a dispute of material fact on this point because, as Navigators argue, it is not based on personal knowledge. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Mr. Baker admitted in his deposition testimony that he had no personal knowledge of the conspiracy or of any of the allegations about the conspiracy that appear in Mr. Sarlo's Information, including when

---

[5] In support of this statement, KLH cites, apparently erroneously, the 2010 insurance policy.

the conspiracy began and when Mr. Sarlo became involved with it. (*See* Baker Dep., Ex. H to Defs.' Loc. R. 56(a)1 Stmt. at 69–73.)

Because KLH presents no other evidence to dispute Mr. Sarlo's statement, the Court assumes, for the purpose of ruling on these motions, that Mr. Sarlo and Mr. Baig began to participate in the conspiracy no later than 2006.

## II. Discussion[6]

### A. Evidentiary/Procedural Disputes

Before the Court can reach the merits of these motions, there are a number of evidentiary and procedural issues raised by the parties that must be addressed.[7] These

---

[6] Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

[7] "'[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.'" *Capanelli v. NYP Holdings, Inc.*, No. 06 CIV. 15397 (SHS), 2009 WL 249150, at *5 (S.D.N.Y. Jan. 30, 2009) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997)). Accordingly, "[a] party may not oppose" or support "a summary judgment motion on the basis of inadmissible evidence, unless the party can 'show[ ] that admissible evidence will be available at trial.'" *Id.* (quoting *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985)); *see also Nyack v. S. Conn. State Univ.*, 424 F. Supp. 2d 370, 374 (D. Conn. 2006) (same).

include: the admissibility of Mr. Baig's memorandum in aid of sentencing submitted to the Court in his criminal case; the admissibility of Mr. Sarlo's statements to Mr. Lowers of Lowers & Associates; the admissibility of Mr. Baker's statements in his Declarations; and the effect of the entry of default against NECD and IMS at this juncture.[8] The Court addresses these issues in turn.[9]

---

[8] KLH additionally disputes the admissibility of Mr. Baig, Mr. Sarlo, Mr. Vestuti, and Mr. DeMilo's plea agreements, informations, and plea allocutions. However, because the statements in these documents do not alter the Court's conclusions in this ruling, the Court does not address KLH's argument, nor does it rely on the statements in reaching its ruling.

[9] In their Reply, Navigators additionally argue that KLH is estopped, under the doctrine of issue preclusion (collateral estoppel) from relitigating the issue of Sarlo, Baig, Vestuti, and DeMilo's guilt. (*See* Defs.' Reply [Doc. # 173] at 2–6.) As the Court informed the parties on May 5, 2016, it will not consider this argument, which was first raised in Reply, in contravention of Local Rule 7(d). *See* D. Conn. L. Civ. R. 7(d) ("A reply brief . . . must be strictly confined to a discussion of matters raised by the responsive brief."); *see also Advanced Fiber Techs. Trust v. J & L Fiber Servs., Inc.*, No. 1:07-CV-1191 (LEK) (DRH), 2010 WL 1948242, at *2 (N.D.N.Y. May 12, 2010) ("To prevent unfairness to the litigants, courts apply a general rule that 'new arguments may not be made in a reply brief'" (quoting *Ernst Haas Studio, Inc. v. Palm Press, Inc.*,164 F.3d 110, 112 (2d Cir. 1999))).

Navigators responded to the Court's ruling by letter dated May 9, 2016, in which they contended that their collateral estoppel argument is properly responsive to arguments raised by Plaintiff in its opposition, and that Plaintiff in fact first raised "the issue of the applicability of the collateral estoppel doctrine" on page 15 of its opposition. This is inaccurate.

The issue of the *admissibility* of the guilty pleas, informations, and plea allocutions was raised by Navigators in their motion for summary judgment, where they argued that these documents are admissible as statements of a party opponent. KLH responded to this argument in its opposition, contending that the statements are not admissible as statements of a party opponent. Page 15 of KLH's opposition, cited by Defendants, is wholly unrelated to this issue; it is a response to Navigators' assertion that KLH is bound by the entry of default against NECD/IMS. It is Navigators that first raise, in reply, the question of whether KLH is prohibited from relitigating issues determined by virtue of Sarlo, Baig, DeMilo, and

### 1.  Mr. Baig's Sentencing Memorandum

Navigators contend that Mr. Baig's statements in his sentencing memorandum in his underlying criminal case are admissible here as either judicial admissions or statements against interest. (Defs.' Mem. Supp. Mot. Summ. J. [Doc. # 166] at 15–16.) KLH disputes both claims. (*See* Pl.'s Opp'n at 21–24.)

### a.  Judicial Admissions

Judicial admissions are "'formal concessions . . . by a party or counsel that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.'" *Hausler v. JP Morgan Chase Bank, N.A.*, 127 F. Supp. 3d 17, 36 (S.D.N.Y. 2015) (quoting *Hoodho v. Holder*, 558 F.3d 184, 191 (2d Cir. 2009)). When a party makes a judicial admission," through, for example, "[f]actual assertions in pleadings and pretrial orders," *AMEX Assurance Co. v. Caripides*, 179 F. Supp. 2d 309, 323 (S.D.N.Y. 2002), "that party 'normally is bound [by that admission] throughout the course of the proceeding,'" *Hausler*, 127 F. Supp. 3d at 37 (quoting *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985)).

However, as Plaintiff argues, courts in this Circuit have generally found that "a judicial admission only binds the party that makes it in the action in which it is made, not 'in separate and subsequent cases.'"[10] *Hausler*, 127 F. Supp. 3d at 37 (quoting *Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 351 F. Supp. 2d 79, 96 (S.D.N.Y. 2004)); *see*

---

Vestuti's guilty pleas—an issue separate and apart from the evidentiary question of whether the pleas, informations, and allocutions are admissible.

[10] Defendants do not respond to this argument in their reply, resting instead on their collateral estoppel theory.

*also Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, 56 F. Supp. 3d 383, 387 n.22 (S.D.N.Y. 2014) ("[A] party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding, [sic] it is not considered binding in a subsequent proceeding." (internal quotation marks omitted)). As such, KLH is not bound by judicial admissions made by Mr. Baig in his underlying criminal case.

### b.  Statements Against Interest

Defendants argue in the alternative (in a footnote), that Mr. Baig's statements in his sentencing memorandum are admissible under the statements against interest exception to the rule against hearsay, codified in Federal Rule of Evidence 804(b)(3).[11] (Defs.' Mem. Supp. at 16 n.2.) The Court agrees, at least with respect to some of Mr. Baig's statements.

Rule 804(b)(3) permits the admission of a statement by a declarant unavailable to testify at trial where the statement is one that "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to . . . expose the declarant to civil or criminal liability." Rule 804(a) specifies that "[a] declarant is considered to be unavailable as a witness if the declarant:"

> **(1)** is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies;
> **(2)** refuses to testify about the subject matter despite a court order to do so;

---

[11] In support of this argument, Defendants erroneously cite to Connecticut caselaw. (*See* Defs.' Mem. Supp. at 16 n.2.) However, as noted by Plaintiff in its opposition (*see* Pl.'s Opp'n at 18), in diversity cases such as this one, federal courts apply federal "procedure and evidentiary rules." *City of New York v. Beretta U.S.A. Corp.*, 228 F.R.D. 147, 156 (E.D.N.Y. 2005); *cf. Ellis v. YMCA Camp Mohawk, Inc.*, 615 F. App'x 697, 698 (2d Cir. 2015) ("In a diversity action, whether expert testimony is required is a matter of state law, whereas the admissibility of a given expert witness is governed by the Federal Rules of Evidence.").

(**3**) testifies to not remembering the subject matter;

(**4**) cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness; or

(**5**) is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure . . . the declarant's attendance or testimony.

Plaintiff maintains that Defendants cannot rely on the statements against interest exception because they have failed to demonstrate that Mr. Baig is unavailable. (Pl.'s Opp'n at 23–24.) In so arguing, however, Plaintiff misconstrues the procedural posture of this case. At the summary judgment stage, all a party must show in order for the Court to consider a particular piece of evidence is that that evidence "'*will be available at trial*'" in an admissible form. *Nyack*, 424 F. Supp. 2d at 374 (quoting *Burlington Coat Factory Warehouse Corp.*, 769 F.2d at 924) (emphasis added). Here, if Defendants are able to procure Mr. Baig's attendance at trial, he can testify regarding the statements in his sentencing memorandum; if Mr. Baig refuses to or cannot testify at trial, he is unavailable, and those statements in his sentencing memorandum that are deemed by the Court to be "against interest" may be admitted into evidence. Because there is, therefore "no basis to doubt that [defendants] will be able to present this evidence in admissible form at trial," *Savage v. Scripto-Tokai Corp.*, 266 F. Supp. 2d 344, 351 (D. Conn. 2003), in ruling on the motions for summary judgment, the Court will consider Mr. Baig's sentencing memorandum.

However, the Court will consider only those statements in the memorandum that are "against [Mr. Baig's] interest" and not merely "collateral."[12] *See Williamson v. United*

---

[12] The Court will not consider, for example, Mr. Baig's statement in the memorandum, cited by Defendants in paragraph 17 of their Local Rule 56(a)1 Statement

*States*, 512 U.S. 594, 600 (1994) ("Rule 804(b)(3) is founded on the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true. . . . The fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts."); *United States v. Jackson*, 335 F.3d 170, 179 (2d Cir. 2003) ("[E]ach particular hearsay statement offered under Rule 804(b)(3) must be separately parsed and must, itself, be self-inculpatory.").

### 2.   Mr. Sarlo's Statements to Lowers & Associates

The next evidentiary dispute concerns statements Mr. Sarlo purportedly made to Mr. Lowers, CEO of Lowers & Associates, during Lowers & Associates' investigation of the theft on behalf of Navigators. Mr. Lowers testified that Lowers & Associates prepared a report entitled Loss Report # 3, dated July 8, 2010, which details the company's investigation, including a June 30, 2010 interview of Mr. Sarlo (with his attorney present) by Mr. Lowers and investigator Tom Stein. (Lowers Dep., Ex. J to Defs.' Loc. R. 56(a)1 Stmt. at 128; *see* Lowers Loss Report # 3 at 9–13.) Mr. Lowers additionally averred that the statements in that section of the report accurately reflect what Mr. Sarlo told them during the interview. (*See* Lowers Dep. at 115–16, 119–21, 126–27, 144–49, 156.)

Navigators assert that Mr. Sarlo's statements are admissible as statements of a party opponent, or in the alternative, as statements against interest. (*See* Defs.' Mem. Supp. at 14–15.) KLH disputes the admissibility of the statements, arguing that they are not

---

that "[t]here was a hole in the NECD[] books because of Sarlo's criminal conduct on [Mr. Baig's] first day on the job." (Baig Sent. Memo., Ex. P to Defs.' Loc. R. 56(a)1 Stmt. at 6.)

statements of a party opponent, and they cannot be admitted as statements against interest because Navigators has not demonstrated that Mr. Sarlo is unavailable. (Pl.'s Opp'n at 21–24.)

KLH's objections, however, lack demonstrated merit. As KLH acknolwedgeed at oral argument, many of Mr. Sarlo's statements are statements against interest which could have subjected him to criminal liability.[13] *See Chambers v. Mississippi*, 410 U.S. 284, 301 (1973) ("McDonald stood to benefit nothing by disclosing his role in the shooting to any of his three friends and he must have been aware of the possibility that disclosure would lead to criminal prosecution."). Moreover, as discussed above, the Court is unpersuaded by KLH's claim that Navigators must demonstrate Mr. Sarlo's unavailability at this stage in the proceedings.[14] Therefore, the Court will consider the Lowers Report (or at least that part of if that is "against interest") in assessing the parties' motions.

### 3. Mr. Baker's Declarations[15]

Navigators object to Mr. Baker's declarations, on the grounds that Mr. Baker is "not competent to testify on behalf of NECD or IMS," or other related corporate entities; the declarations contain inadmissible hearsay; and the declarations contain conclusory

---

[13] Mr. Sarlo's statements to Mr. Lowers were made on June 30, 2010. The criminal proceedings against Mr. Sarlo did not commence until October 14, 2010.

[14] Because the Court finds that Mr. Sarlo's statements in the Lowers Report are statements against interest, it does not reach Navigators' argument that the statements are also statements of a party opponent.

[15] Navigators additionally object to Mr. Breitenbach's declarations, on the same grounds as they object to Mr. Baker's declarations. (*See* Defs.' Reply at 10.) The Court cannot understand this objection, as Mr. Breitenbach's declarations consist solely of attestations that the documents attached to the declarations are true and correct copies.

statements and legal arguments.[16] (*See* Defs.' Opp'n [Ex. 171] at 7, 9; Defs.' Reply at 10.) These objections appear to have some merit. Under Federal Rule of Civil Procedure 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Mr. Baker's declarations, however, contain a number of legal arguments[17] and statements on matters about which he does not have personal knowledge.[18] The Court will disregard those portions of Mr. Baker's declarations that do not comport with Rule 56(c)(4).

---

[16] KLH does not respond to this argument.

[17] For example, in his declaration in opposition to Navigators' motion for summary judgment, Mr. Baker states: "In short, the motion should be denied because it is impossible to determine the facts surrounding NECD/IMS's embezzlement of Domestic Bank's funds. The facts are far from undisputed. For example, Navigators fails to establish which policy is applicable or clearly allege what and when Joe Sarlo did to be part of the embezzlement scheme. Accordingly the Court should deny Navigators' motion." (Baker Opp'n Decl. ¶ 6.) He also avers, "As our attorneys explain in the accompanying papers, Navigators' attempts to rescind or disclaim coverage under the policy are without legal or factual merit. The loss sustained by Domestic as a result of the actions of NECD/IMS employees is covered under the terms of the policy, and Navigators' failure to pay constitutes a breach of the relevant Navigators' insurance policy as a matter of law." (*Id.* ¶ 48; Baker Decl. [Doc. # 164-14] ¶ 26.)

[18] For example, Mr. Baker states "starting sometime in 2008, a number of NECD/IMS's employees[] started diverting to themselves cash supplied by Domestic to refill ATMS. . . . The main participants in the scheme were Mirza Baig . . . and Gary Vestuti . . . . Much later in the conspiracy it is alleged that John DeMillo . . . and Joe Sarlo . . . may have tried to cover up the scheme. However, they did not actually steal money and learned of the scheme much later th[a]n the true actors. In fact, it is my understanding that Joseph Sarlo did not learn of the scheme until the very end." (Baker Opp'n Decl. ¶¶ 35, 37; Baker Decl. ¶ 18.) Mr. Baker himself, however, testified that he had no "personal firsthand knowledge" of any facts concerning the conspiracy to defraud Domestic Bank. (Baker Dep. at 69–73.)

### 4.  Effect of Entry of Default

The final procedural matter before the Court is the effect of the entry of default against NECD/IMS on KLH and these motions for summary judgment. Navigators contend that all facts alleged in their cross-claims against NECD/IMS are, by virtue of the entry of default, admitted not only as to NECD/IMS but also as to KLH. (*See* Defs.' Mem. Supp. at 16–17; Defs.' Opp'n 12–13.) This argument was, however, implicitly rejected by this Court in its ruling denying Defendants' first motion for default judgment. As the Court explained in that ruling, "where, as here, a non-defaulting party's interests are intertwined with those of the defaulting party," binding the non-defaulting party by admissions made by virtue of the entry of default "would prevent [that] party from litigating its claims and thus cause great prejudice." (Ruling Mot. Default [Doc. # 99] at 3.) In order to safeguard KLH's right to litigate its case, the Court declined to enter default judgment on Defendants' cross-claims. (*Id.* at 5–6 (citing *see Farberware, Inc. v. Groben*, No. 89 CIV. 6240 (PKL), 1991 WL 123964, at *2 (S.D.N.Y. July 3, 1991) ("[Where default enters against one of several defendants alleged to be jointly liable] it is appropriate to enter a default, though not a judgment, against the defaulting party, thereby barring his participation in further proceedings as to the merits. If the remaining defendants prevail, the defaulting defendant would then be exonerated, whereas if the plaintiff prevails on the merits, judgment would be entered against all defendants, including the defaulting party.")).) The Court's purpose in denying the motion for default judgment would be undermined if it now, before considering KLH's substantive arguments, ruled that NECD and IMS's admissions bind KLH. For that reason, the Court rejects Defendants' contention that the facts alleged in

their cross-claims must be deemed admitted for purposes of Navigators' and KLH's motions for summary judgment.

## B. Navigators' Motion for Summary Judgment on KLH's Claim and KLH's Partial Motion for Summary Judgment

The Court now turns to the merits of the parties' cross-motions for summary judgment. KLH moves for summary judgment only on its breach of contract claim with respect to the 2010 insurance policy. Navigators, by contrast, seek summary judgment on both the breach of contract count and the promissory estoppel count, as to all relevant policy periods (2007–2010).[19] The parties' arguments in support of their motions are discussed below.

### 1. Breach of Contract

In order to prove a claim for breach of contract in Connecticut, a plaintiff must show: "(1) the formation of an agreement; (2) performance by one party; (3) breach of the agreement by the opposing party; (4) direct and proximate cause; and (5) damages." *McMann Real Equities Series XXII, LLC v. David McDermott Chevrolet, Inc.*, 93 Conn. App. 486, 503–04 (2006). At issue here is the element of breach.

Navigators contend that no reasonable jury could find them liable for breach of contract because they properly denied coverage and rescinded the insurance policies on the grounds that: (1) there were material misrepresentations in the 2007–2010 insurance applications submitted by NECD/IMS, and relatedly, coverage is barred by virtue of the known loss doctrine; (2) acts of concealment by NECD/IMS constituted a fraud upon

---

[19] KLH does not allege violations of the 2006 policy. (*See* Pl.'s Opp'n at 30.)

Navigators which vitiated the policies, and relatedly, NECD/IMS failed to disclose material facts in their applications for insurance; (3) KLH failed to comply with several conditions precedent in the insurance policies; (4) NECD/IMS failed to comply with the notice provisions of the policies; (5) KLH's suit is untimely, and in any event, KLH is not entitled to coverage due to the employee dishonesty/embezzlement clause; (6) coverage was properly denied under the directors and officers exclusion; (7) NECD/IMS failed to comply with the night depositories and record-keeping requirements in the policies; and (8) NECD/IMS's losses were not fortuitous.

KLH, for its part, contends that: (1) Navigators have not put forth sufficient admissible evidence to prove their claims; (2) Navigators have waived many of the arguments they attempt to raise now; (3) some of the provisions Navigators cite were not in the 2007–2010 policies; and (4) no reasonable jury could find that Navigators did not breach the provisions of the 2010 insurance policy by refusing to cover Domestic Bank's losses.[20]

For the reasons discussed below, the Court is persuaded that no reasonable jury could find that there were not material misrepresentations in the 2007–2010 insurance applications submitted by NECD/IMS, and therefore the Court does not reach the parties' remaining arguments.

---

[20] KLH additionally argues that summary judgment is not appropriate on Navigators' motions for summary judgment because Navigators have failed to establish which policy applies to KLH's claims. (*See* Pl.'s Opp'n at 16–17.) It is, however, apparent that Navigators' claim is that KLH is not entitled to coverage under any policy issued by Navigators.

"Under Connecticut law, an insurance policy may be voided by the insurer if" the insurer "prove[s] three elements: (1) a misrepresentation (or untrue statement) by the plaintiff which was (2) knowingly made and (3) material[21] to [the insurer's] decision whether to insure." *Pinette v. Assurance Co. of Am.*, 52 F.3d 407, 409 (2d Cir. 1995). Similarly, the known loss doctrine bars coverage "for damage that has been fraudulently concealed from the insurer prior to the purchase of the insurance policy." *Nationwide Property & Cas. Ins. Co. v. Greater New York Mut. Ins. Co.*, No. CV065002440, 2009 WL 3087247, at *6 (Conn. Super. Ct. Aug. 10, 2009).

Here, Navigators allege that NECD/IMS made material misrepresentations by failing to disclose and fraudulently concealing known losses in their 2007 to 2010 insurance applications. Specifically, Navigators assert, each insurance application asked whether NECD/IMS had sustained losses in the previous six years, and Mirza Baig, on behalf of NECD, and as part of his duties as an NECD employee, responded "no" every year from 2007 to 2010, although he and NECD/IMS CEO Joe Sarlo knew as of 2005 that in fact NECD and IMS had sustained significant losses due to employee theft.

KLH does not dispute that if NECD/IMS made such misrepresentations, they would be material and would be grounds for rescission. However, KLH denies that any loss occurred prior to March 2010. This argument is premised on KLH's claim that under the insurance policies' definition of loss, "a loss did not occur until Domestic Bank demanded

---

21 "[A] fact is material if 'it would so increase the degree or character of the risk of the insurance as to substantially influence its issuance, or substantially affect the rate of premium.'" *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 295 (2d Cir. 2010) (quoting *Pinette*, 52 F.3d at 411).

back its Bank Cash or NECD could not reimburse the money under the Courier Agreement." (Pl.'s Mem. Supp. at 16.) The "definition" of "loss" to which KLH refers is a clause in the 2010 policy which states "[t]his policy covers the liability of the insured assumed by the contract or otherwise, for loss of or damage to property." (*Id.* (quoting 2010 Ins. Policy ¶ 1).)

There are several problems with KLH's argument. First, and importantly, the clause is plainly *not* a definition of loss since it uses the term "loss" in the "definition"; it is a statement of the breadth of coverage under the policy. The question on the applications that forms the basis for Navigators' claims of misrepresentation, however, asked about *any* losses in the prior six years, "*whether covered by insurance or not* and if insured whether a claim was paid or not." It did *not* ask whether NECD/IMS experienced any losses covered under the policy or whether NECD/IMS had incurred any liability. Second, the quoted language appears in the policy, not in the application, and the claimed material misrepresentations were in the application, not the policy. Finally, the language does not appear in the policy until 2010, so it can hardly be said to define "loss" in the 2007, 2008, and 2009 applications.

This is not a case "[w]here a question in [an insurance] application is ambiguously worded," and the applicant may have reasonably misunderstood what information the insurer sought. *Great Am. Ins. Co.*, 607 F.3d at 294–95. Rather, the question was clear and straightforward. *See Connecticut Medical Ins. Co. v. Kulikowski*, 286 Conn. 1, 5 (2008) ("If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning."). As such, if NECD/IMS represented on the application that they suffered no

losses in the prior six years with knowledge that in fact substantial sums of money had gone missing, they are liable for material misrepresentations.[22] That is the case here.

---

[22] KLH argues now, as it did in opposing Navigators' motion to dismiss, that it would be "unconscionable" for the Court to apply the known loss doctrine against an innocent third-party beneficiary. (*See* Pl.'s Opp'n at 32.) The Court rejects that argument for the same reasons it rejected it in its ruling on the motion to dismiss, namely that a loss payee has no greater rights than the insured under an insurance policy, and is subject to the same defenses as the insured. (*See* Ruling Mot. Dismiss [Doc. # 34] at 13 n.5 (citing *Pavano v. Western Nat'l Ins. Co.*, 139 Conn. 645, 649 (1953) ("Although the plaintiff had the right to sue the insurer on the contract, his substantive rights were no better than those acquired under the policy by the [the insured]. Any defenses good against [the insured] are good against the plaintiff.").) "If NECD and IMS are subject to the known loss doctrine, so is Plaintiff." (*Id.*)

The Connecticut Supreme Court's decision in *Davis Scofield Co. v. Agricultural Ins. Co.*, 109 Conn. 673, 145 A. 38 (1929), while not completely analogous, is instructive. There, "[t]he agent of the plaintiff, by the fraudulent concealment of facts material to the risk involved in the issuance of [an insurance] policy, procured the policy of insurance from the defendant, who had no knowledge of the facts." *Id.* at 42. The plaintiff argued that it would be inequitable for it to be held accountable for the acts of its agent, since it did not know of its agent's fraud when the fraud occurred, and its agent's actions were adverse to the plaintiff's interests. *See id.* The court rejected that argument, holding that "[o]ne who claims through a contract procured by the fraud of its agent is in precisely the same legal situation as if it had itself procured the contract through a like fraud." *Id.*; *see also Northwestern Mut. Life Ins. Co. v. Gil*, No. 3:07cv303 (VLB), 2009 WL 276086, at *4 (D. Conn. Feb. 5, 2009) (holding that a principal cannot "accept the fruits of the fraud on [an insurer]" even if it did not know about the fraud when it was perpetrated); 3 *Couch on Ins.* § 46:18 ("A policy of insurance is avoided by the concealment or misrepresentation of a material fact by the insured's agent even though the insured is innocent in the matter . . . under the long-recognized rule that a principal cannot profit by the fraud, concealment, or misrepresentations of his or her agent when that agent is acting within the scope of his or her authority."). Likewise here, KLH, which has no better rights than NECD/IMS, cannot profit from the fraud of NECD/IMS's agents, even if KLH did not know about the fraud at the time it was perpetrated.

As discussed in the factual background section above, the evidence in the record is such that no reasonable jury could find that Mr. Sarlo and Mr. Baig did not know that thousands or millions of dollars were missing when Mr. Baig, on behalf of NECD, stated to the contrary on the insurance applications in February 2007, January 2008, January 2009, and December 2009. Because such knowing misrepresentations constitute material misrepresentations and grounds for rescission as a matter of law, summary judgment in Navigators' favor is granted on KLH's breach of contract claim.

### 2. Promissory Estoppel

Navigators also move for summary judgment on the promissory estoppel count.[23] In that count, Plaintiff alleges:

> On information and belief, by issuance of the policies and the collection and retention of the premiums therefore, Navigators directly or indirectly represented to Domestic Bank that it had conducted reasonable due diligence as to NECD and IMS, the entities that it was insuring, that it knew of its contracts for services to be provided to Domestic Bank, and that it intended to provide coverage to Domestic Bank under the policies as a loss payee, including in circumstances involving losses from "dishonest or fraudulent acts" of NECD/IMS's employees . . . . Navigators made such representations knowing that Domestic Bank, the largest customer of NECD, would rely upon them or that it was reasonably likely that Domestic Bank would rely upon them.

> Domestic Bank did reasonably rely upon Navigators' promise and representations and took substantial actions in reliance thereon by contracting and conducting business with NECD and IMS and by forbearing from requiring NECD and IMS to obtain other insurance coverage and other safeguards.

---

[23] KLH does not cross-move for summary judgment on this count.

> Domestic Bank has relied to its detriment upon Navigators' promise and
> representation that it would provide coverage for the benefit of Domestic
> Bank.

(2d Am. Compl. ¶¶ 78–80.)

Navigators previously moved to dismiss this count, partly on the grounds that a plaintiff may not use promissory estoppel to expand insurance coverage beyond the express terms of the policy. The Court rejected that argument, reasoning that "Plaintiff does not purport to use its promissory estoppel claim to expand the policy beyond its terms or to avoid an express exclusion, only to assert that Defendants are estopped from raising any defense of fraud on the part of NECD because their agent represented to Plaintiff that Defendants had properly audited NECD before issuing the policy." (Ruling Mot. Dismiss at 17.)

Plaintiff now appears, however, to raise a somewhat different claim, namely that "Navigators through its agents Marshall Sterling and Alexander Forbes, knowingly and intentionally represented that the policies protected Domestic Bank, as loss payee, against dishonest acts or omissions on the part of NECD/IMS, to [sic] which Navigators knew Domestic Bank would rely on." (Pl.'s Opp'n at 38.) As support for this assertion, KLH points to two emails exchanged between Mr. Bolotow (on behalf of Domestic Bank), Debbie DeMarco and Ron Bray of Sterling & Marshall, and John Everett of Alexander Forbes. In the first email, dated October 9, 2006, Mr. Bolotow asks if he is correct that under the Armored Car Liability policy, there would be "coverage for acts or omissions of the insured or any of its employees," such that there would be "coverage under this policy for a theft of Domestic Bank's money by an employee of NECD." (Bolotow Email, Ex. 14 to Breitenbach Opp'n Decl.) It appears that Mr. Bolotow's email, which was originally sent to

23

Debbie DeMarco, was forwarded to Ron Bray and then to John Everett, who responded directly to Mr. Bray, who then forwarded the response to Mr. Bolotow. (Everett Email, Ex. 15 to Breitenbach Opp'n.) In the response, Mr. Everett confirmed that Mr. Bolotow's understanding of the terms of the policy was correct. (*Id.*)

Navigators seek summary judgment on this claim, arguing that (1) "Domestic Bank has not shown that it changed its position in reliance on the existence of certain facts, thereby incurring some injury"; and (2) neither Marshall & Sterling nor Alexander Forbes acted as Navigators' agent, and therefore Navigators are not bound by the representations of either. (Defs.' Mem. Supp. at 37–38.) Because the first argument has merit, the Court does not reach the second.

The only representation by Marshall & Sterling or Alexander Forbes that KLH purports to have relied upon was the representation that the insurance policy covered "a theft of Domestic Bank's money by an employee of NECD." That representation, however, must be read in conjunction with the express terms of the policies, including the limitation in every policy from 2007 to 2010 that losses directly resulting from acts or omissions of an officer or director of NECD/IMS would not be covered. (*See* 2007 Ins. Policy at 17; 2008 Ins. Policy at 19; 2009 Ins. Policy at 13; 2010 Ins. Policy at 13.) As the Court noted in its ruling on Navigators' motion to dismiss, "a plaintiff may not use" estoppel "to expand insurance coverage beyond the express terms of the policy." (Ruling Mot. Dismiss at 17 (citing *Heyman Assocs. No. 1 v. Ins. Co. of State of Pa.*, No. 397087, 1993 WL 57740, at *8 (Conn. Super. Ct. Feb. 24, 1993), *aff'd*, 231 Conn. 756, 653 A.2d 122 (1995)).) Accordingly, Plaintiff may not rely on promissory estoppel to claim that its losses here, which resulted

from acts and omissions of NECD/IMS's CEO,[24] should have been covered, and summary

judgment should be granted in Navigators' favor on KLH's promissory estoppel count.

### C.  Navigators' Motion for Summary Judgment on the Cross-Claims

In addition to seeking summary judgment on KLH's complaint, Navigators also

seek summary judgment on their cross claims, which allege: insurance fraud (Count One)

and indemnification[25] (Count Two), and seek a declaratory judgment that Navigators

properly rescinded the insurance policies (Count Three). (*See* Cross-Claims [Doc. # 51].)

KLH opposes.

To prove insurance fraud, a plaintiff must show that: "(1) a false representation was

made as a statement of fact; (2) the statement was untrue and known to be so by its maker;

(3) the statement was made with the intent of inducing reliance thereon; and (4) the party

---

[24] The directors and officers exclusion states: "This policy does not cover loss directly resulting from any act(s), or error(s) or omission(s) of Directors or Officers of the Assured except when such Director or Officer is performing acts coming within the scope of the usual duties of an employee of the Assured" (2007 Ins. Policy at 17; 2008 Ins. Policy at 19; 2009 Ins. Policy at 13; 2010 Ins. Policy at 13). While KLH contends that "[i]t is disputed that Joe Sarlo was an active participant" in the theft and that "[i]t is more likely that Joseph Sarlo was the last person to find out about the scheme, never received any money from the scheme, and when he did find out about the scheme he may have attempted to recover the monies and fix the scheme" (Pl.'s Opp'n at 36), the summary judgment record contains no admissible evidentiary support for these bald assertions. KLH cites to only Mr. Baker's declaration, but as discussed above, Mr. Baker had no personal knowledge of the conspiracy and his statements are therefore not admissible evidence. Rather, the only reasonable inference that can be drawn from the record evidence is that Mr. Sarlo not only knew about the scheme but was an active participant in it.

[25] In light of the Court's ruling on the insurance fraud count, it does not reach the indemnification count (which seeks indemnification from NECD/IMS in the event the Court rules in KLH's favor).

relied on the statement to his detriment." *Ensign Yachts, Inc. v. Arrigoni*, No. 3:09-CV-209 (VLB), 2010 WL 918107, at *14 (D. Conn. Mar. 11, 2010). For the reasons set forth in the above discussion of the other motions for summary judgment, no reasonable jury could find that NECD/IMS did not knowingly make false representations of material fact regarding their past losses, upon which Navigators relied to their detriment. As such, summary judgment is granted in Navigators' favor on its insurance fraud cross-claim. Further, because, as discussed above, no reasonable jury could find that Navigators' rescission of the policies on the basis of material misrepresentations and the known loss doctrine was wrongful, summary judgment is granted in Navigators' favor on the declaratory judgment count.

### III. Conclusion

For the foregoing reasons, KLH's Motion [Doc. # 164] for Partial Summary Judgment is DENIED; Navigators' Motion [Doc. # 165] for Summary Judgment is GRANTED; Navigators' Motion [Doc. # 168] for Summary Judgment on their Cross-Claims is GRANTED; and Navigators' Motions [Doc. ## 121, 123] for Default Judgment are DENIED as MOOT. Further, the Court declares and decrees that:

1. Each of the policies of insurance issued by Navigators Insurance Company to NECD and IMS was properly rescinded due to the material misrepresentations made by NECD and IMS in the procurement of said policies of insurance.

2. Navigators Insurance Company also properly denied coverage under the policies.

The Clerk is requested to close this case.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 24th day of June, 2016.